IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-595-FL-BM

| | | |
|---|---|---|
| GILBERT BRYAN,<br><br>Plaintiff,<br><br>v.<br><br>TRANSUNION LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **MEMORANDUM AND RECOMMENDATION** |

This matter is before the court on the motion by defendant Trans Union LLC[1] ("Trans Union" or "defendant") to dismiss plaintiff's complaint for failure to state a claim ("motion to dismiss"). [DE-6]. Defendant filed a memorandum in support of the motion to dismiss. [DE-7]. Plaintiff filed a response in opposition [DE-9], to which defendant filed a reply [DE-16]. Also before the court is plaintiff's motion for extension of time [DE-14]. These matters were referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A).

For the reasons stated below, the undersigned RECOMMENDS that (i) defendant's motion to dismiss [DE-6] be GRANTED; and (ii) plaintiff's motion for extension of time [DE-14] be DENIED AS MOOT.

Also, before the court is plaintiff's motion requesting resolution of pending motion to dismiss or, in the alternative, a status conference ("motion for resolution") [DE-21]. In light of the above recommendation that defendant's motion to dismiss [DE-6] be GRANTED, the undersigned RECOMMENDS that plaintiff's motion for resolution [DE-21] be DENIED AS MOOT.

[1] While plaintiff lists "Transunion" as the defendant, ([DE-1-3] at 2), Trans Union notes that its correct name is Trans Union LLC. [DE-1] at 1.

## I. BACKGROUND

### A. Relevant procedural background

On August 13, 2025, plaintiff commenced an action against Trans Union in Cumberland County District Court. [DE-1-3] at 2. On September 18, 2025, Trans Union removed this action to the United States District Court for the Eastern District of North Carolina pursuant to 28 U.S.C. § 1446. [DE-1] at 1. On September 24, 2025, Trans Union filed the instant motion to dismiss [DE-6] and a memorandum in support [DE-7]. On October 10, 2025, plaintiff filed a memorandum in opposition [DE-9], and a motion for extension of time [DE-14] seeking to amend his complaint to include a demand for a jury trial. Trans Union filed a reply to plaintiff's memorandum in opposition on October 16, 2025. [DE-16].

### B. Plaintiff's complaint

Plaintiff alleges "that TransUnion violated the [Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, ] and the [Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. §§ 5536(a)(1)(A)–(B), 5564, and 5565] by failing to reasonably reinvestigate consumer disputes, failing to block fraudulent accounts, and failing to provide adequate notice to consumers of the outcome of their disputes." [DE-1-5] at 2. Plaintiff filed thirty-five pages of exhibits with his complaint, consisting of: (i) plaintiff's first Consumer Financial Protection Bureau ("CFPB") complaint ("first CFPB complaint") (*id.* at 7-10); (ii) a Federal Trade Commission ("FTC") identity theft report (*id.* at 11-12); (iii) plaintiff's second CFPB complaint ("second CFPB complaint") (*id.* at 14-16); (iv) a letter from plaintiff to Trans Union dated May 12, 2025 ("May 12 demand letter") (*id.* at 17-18); (v) copies of "Certificate of Discharge" forms purportedly[2] from

[2] The docket of the United States Bankruptcy Court for the Eastern District of North Carolina contains no record of such certificates of discharge or any bankruptcy proceedings in plaintiff's name as of the date of this memorandum and recommendation.

the United States Bankruptcy Court for the Eastern District of North Carolina for various disputed accounts ("certificates of discharge") (*id.* at 19-24); (vi) copies of Internal Revenue Service ("IRS") Forms 1099-C cancellation of debt for the various disputed accounts (*id.* at 25-28); (vii) plaintiff's third CFPB complaint ("third CFPB complaint") (*id.* at 30-33); (viii) a copy of plaintiff's "notice of claim" letter to Trans Union dated July 28, 2025 ("July 28 notice of claim letter") (*id.* at 35-38); and (ix) United States Postal Service tracking information (*id.* at 39-40).

To the extent that information in plaintiff's exhibits qualifies or contradicts allegations in plaintiff's complaint, the undersigned has deferred to the information in the exhibits. *See Fayetteville Invs. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), Fed. R. Civ. P., the exhibit prevails.") (citing 2A Moore's Federal Practice, ¶ 10.06, p. 10-24); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016) ("When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper.").

**1. Factual allegations**

Plaintiff alleges that on December 9, 2024, he filed his first CFPB complaint disputing several accounts appearing on his Trans Union credit report. [DE-1-5] at 3. Plaintiff summarizes the substance of his first CFPB complaint, with the claim that he "demanded the blocking of these accounts and all associated fraudulent hard inquiries and collections within 4 business days" and "includ[ed] a copy of the FTC Identity Theft Complaint and proof of identity." *Id.* Plaintiff asserts that, despite the submission of these documents, Trans Union "failed to block, delete or otherwise lawfully respond" to the alleged erroneous accounts. *Id.*

The exhibit representing the first CFPB complaint (*id.* at 7-10) reveals the following information. Plaintiff demands that Trans Union "block information appearing on [plaintiff's] consumer credit report that is the result of identity theft and fraud." *Id.* at 7. He highlights "[five] fraudulent accounts consist[ing] of . . . personal credit card accounts opened at: BARCLAYS BANK DELAWARE, DISCOVER BANK, JPMCB CARD, NAVY FEDERAL CREDIT UNION, [and] US BANK." *Id.* Plaintiff alleges that "[t]hese accounts have resulted in several fraudulent hard inquiries and fraudulent collections appearing on [his] consumer FICO credit report." *Id.* The first CFPB complaint purports to contain various attachments, including plaintiff's FTC identity theft report, "a list of the hard inquiries in question, [and] a copy of the consumer FICO credit report maintained by [Trans Union] which shows the . . . fraudulent items." *Id.* at 7-8.

Plaintiff has attached to his instant complaint what appears to be the same FTC identity theft report referenced in his first CFPB complaint. *See id.* at 11-12. The identity theft report lists "[five] separate fraudulent accounts appearing on [plaintiff's] consumer FICO credit report which [plaintiff does] not recognize as reported and which are the result of identity theft and fraud" (*id.* at 11), i.e., fraudulent charges on five credit cards associated with Barclays, Discover Bank, JPMCB Card, Navy Federal Credit Union, and U.S. Bank. *Id.* at 11-12. For each of the five accounts, the identity theft report provides "12/2024" as the date that the fraud began, yet, the report provides various dates from "3/2018" to, at the latest, "7/2021" as the dates upon which plaintiff discovered the fraud. *Id.* The month and year that plaintiff "discovered" the fraud on his JPMCB card matches the dates from the certificates of discharge and 1099-C forms referenced below. *Compare id.* at 11 ("7/2021") *with id.* at 19-20, 26 ("07/21/2021). Finally, the identity theft report is not signed with plaintiff's name, but rather with the name "Gil Bryan Estate." *Id.* at 12.

On January 15, 2025, Trans Union responded to plaintiff's first CFPB complaint. *Id.* at 9.

Therein, Trans Union asserts "the documents [plaintiff] provided [in the first CFPB complaint] were not acceptable." *Id.* Trans Union instead "investigated the information by contacting the creditors." *Id.* In its response to the first CFPB complaint, Trans Union represents that the Barclays and Navy Federal Credit Union accounts were deleted from plaintiff's credit file, but that the JPMCB, U.S. Bank, and Discover Bank accounts were "verified as reported." *Id.* at 9-10. After soliciting plaintiff's feedback on January 15, 2025, the CFPB eventually closed the complaint. *Id.* at 10.

Plaintiff alleges that he submitted his second CFPB complaint on May 12, 2025, "attaching [to the second CFPB complaint] all prior evidence, affidavits, discharge certificates, 1099-C forms, and identification documents." *Id.* at 3. Plaintiff claims that following his second CFPB complaint, "[t]he following items remain uncorrected on [p]laintiff's credit file: USAA Federal Savings BK . . . , USAA Federal Savings BK . . . ; and JPMCB CARD." *Id.*

The exhibit representing plaintiff's second CFPB complaint (*id.* at 14-16) reveals the following information. Plaintiff disputes six accounts, (i) three appear to be the same as those disputed in his first complaint, i.e., JPMCB, Discover Bank, and U.S. Bank; and (ii) three appear to be newly disputed accounts, i.e., two "USAA Federal Savings BK" accounts and an "Apple Card-GS Bank. " *Id.* at 14. He "demand[s] that [Trans Union] investigate[] and update[]/correct[] these errors to reflect the discharge of the debts in bankruptcy on [his] credit report as stated in 11 U.S.C. § 525(a)." *Id.* In the second CFPB complaint, plaintiff states that he attached a "letter explaining [his] position to Trans Union"; a "notarized '[c]ertificate of [d]ischarge' for each account"; a "'1099-C' verifying status of each account"; and his identification documents. *Id.*

In the attached letter to Trans Union, dated May 12, 2025, plaintiff "demand[s] the [six disputed] accounts . . . be deleted immediately." *See id.* at 17-18. Plaintiff claims to have "attached

a notarized '[c]ertificate of [d]ischarge' and . . . '1099-C' verifying [the] status of these accounts" (*id.*). The letter appears to be signed by plaintiff and includes a "jurat notary" providing that plaintiff "certif[ies] that the information provided [in the letter] is true and accurate to the best of my knowledge." *Id.* at 18.

Plaintiff appears to attach the referenced IRS Forms 1099-C and certificates of discharge exhibits to the instant complaint. *See id.* at 19-28. In the IRS Forms 1099-C, plaintiff, "Gilbert Bryan," is listed as the "creditor," while the financial institutions associated with the disputed accounts are listed as "debtors." *See id.* at 25-28 (listing "USAA FEDERAL BANK," "J.P. Morgan ChASE [sic]," "Apple/Goldman Sachs Card," "Discover Card," and US Bank" as "debtors"). Each "certificate of discharge" includes a header of "United States Bankruptcy Court for the Eastern District of North Carolina." *Id.* at 19, 21, 23. Yet, the certificates are only signed by plaintiff and notarized by a Sampson County Notary Public. *Id.* at 20, 22, 24. Plaintiff appears to have signed (i) the signature block for the "debtor" on these certificates, and (ii) the signature block for the "jurat notary," which provides that "I, the undersigned, certify the information provided herein is true and accurate to the best of my knowledge." *See id.*

The certificates of discharge list the various financial institutions associated with the disputed accounts under the "consumer name" (*id.* at 19, 21, 23) and provide dates of discharge ranging from March 2018 through April 2022 (*see id.* at 20, 22, 24). These certificates purport to certify that "the debtor named above[, *i.e.*, plaintiff,] has granted a discharge of consumer debt as defined 11 U.S.C. § 101(8) of the United States Code" and "[a]ll debts arising before the date of the order for relief under this chapter has been discharged." *Id.* at 20, 22, 24. The substantive portion of the certificates of discharge concludes as follows: "I request relief in accordance with the chapter of title 11, United States Code, specified in this petition." *Id.*

Trans Union responded to plaintiff's second CFPB complaint on June 25, 2025. *Id.* at 16. In its response, Trans Union represents that the Discover Bank, U.S. Bank, and both USAA Federal Savings Bank accounts were "verified as reported," and the "APPLE CARD GS BANK USA" account was deleted from plaintiff's credit file. *Id.* Trans Union's response does not appear to include any information pertaining to the JP Morgan Chase account. *See id.* After soliciting plaintiff's feedback on January 15, 2025, the CFPB eventually closed the complaint. *Id.* at 10.

Plaintiff alleges that he submitted his third CFPB complaint on June 13, 2025. *Id.* at 3. He maintains that he "referenc[ed] the previous dispute and reiterat[ed Trans Union's] obligations under 15 U.S.C. § 1681i." *Id.* Despite this request, plaintiff alleges, "[t]he disputed items [on plaintiff's credit report] remain present, with no proper response or correction" from Trans Union. *Id.*

The exhibit representing plaintiff's third CFPB complaint (*id.* at 30-33) reveals the following information. On May 12, 2025, plaintiff "submitted a complaint to [Trans Union] via the CFPB.gov website." *Id.* at 31. He represents that "[i]t has been over the mandatory 30 days [since his] dispute was submitted." *Id.* He claims that a credit reporting agency ("CRA"), under 15 U.S.C. § 1681i, must "delete disputed items off a consumer's credit report" if the CRA fails to "respond to a consumer's dispute within 30 days." *Id.* The last entry in the third CFPB complaint represents that Trans Union "is still working on [plaintiff's] issue." *Id.* at 33. The top of the first page of this CFPB complaint denotes the complaint's status as "closed." *Id.* at 30.

Plaintiff alleges that "[o]n June 30, 2025, [Trans Union] received a certified '[m]ethod of [v]erification' letter from [p]laintiff" ("June 30 method of verification letter"). *Id.* at 3. Plaintiff maintains that this letter "request[ed] documentation of [Trans Union]'s reinvestigation and specific evidence of how [it] verified the continued reporting of disputed accounts." *Id.* at 3-4.

Trans Union, plaintiff claims, "has not responded to this lawful request within 30 days." *Id.* at 4. Further, plaintiff alleges that "the disputed accounts remain uncorrected." *Id.* Plaintiff states that this letter is "attached hereto as Exhibit D." *Id.*[3]

Plaintiff alleges that he sent the July 28 notice of claim letter to Trans Union, "which was received by [Trans Union] on July 30, 2025 . . . giving [Trans Union] 10 days to remove the . . . disputed items/accounts." *Id.* at 4. Following receipt of this letter, however, Trans Union "did not remove the disputed accounts." *Id.* The July 28 notice of claim letter appears to be attached as an exhibit to plaintiff's complaint. *Id.* at 35-38.

The contents of the July 28 notice of claim letter substantially mirror the contents of the instant complaint. *Compare id.* at 35-38 *with id.* at 2-5. Plaintiff details the chronology and contents of his first, second, and third CFPB complaints. *Id.* at 35-36. He cites the two "USAA Federal Savings BK" accounts and the "JPMCB Card" that remain "uncorrected on [his] credit file." *Id.* at 36. Plaintiff refers to the aforementioned June 30 method of verification letter, stating that he "requested to see any power of attorney authorizing [Trans Union] to communicate with supposed creditors impersonating [plaintiff]." *Id.* Plaintiff refers to a "further CFPB dispute" that is not mentioned in his complaint, allegedly filed on July 10, 2025. *Compare id. with id.* at 2-5. This dispute supposedly pertained "to the fraudulent collection account of LVNV Funding LLC/Resurgent Capital Services," and included "an FTC Identity Theft Complaint," identification documents, and "proof of address." *Id.*

In the July 28 notice of claim letter, plaintiff also alleges the same or similar statutory violations and damages sustained as in the instant complaint. *Compare id.* at 36-37 *with id.* at 4-

[3] While plaintiff alleges that both his June 30 method of verification letter and July 28 notice of claim letter are attached as Exhibit D, the document appearing as Exhibit D in plaintiff's complaint only appears to represent his July 28 notice of claim letter. *Compare id.* at 4 *with id.* at 35-38.

5. Plaintiff requests that, "[w]ithin 10 days of receipt of this" letter, Trans Union "remove all disputed, fraudulent, and/or discharged accounts and collections"; "[b]lock all information required to be blocked under . . . 15 U.S.C. § 1681c-2"; "[p]rovide full, written explanation and documentation of [Trans Union's] method of verification"; and "[p]rovide a written settlement proposal to resolve [plaintiff's] damages demand." *Id* at 37-38. Trans Union's "[f]ailure to comply" with these requests, plaintiff asserts, "will result in immediate legal action." *Id.* at 38. Finally, plaintiff states that the "[July 28 notice of claim] letter is sent with full reservation of rights." *Id.*

Also included in the exhibit are United States Postal Service tracking information (*id.* at 39), and a scan of a United States Postal Service envelope (*id.* at 40). The tracking information reveals that the tracked package was received on July 31, 2025. *Id.* at 39.

**2. Jurisdictional allegations**

Plaintiff asserts that the court has federal question jurisdiction over his claims pursuant to 28 U.S.C. § 1331. [DE-1-5] at 3. He also asserts jurisdiction under 15 U.S.C. § 1681p. *Id.*

**3. Legal claims**

Plaintiff brings claims against defendant under the FCRA for: (i) "[f]ailure to block fraudulent accounts within [four] business days" in violation of 15 U.S.C. § 1681c-2; (ii) "[f]ailure to conduct a reasonable investigation and to delete unverifiable/discharged items within [thirty] days" in violation of 15 U.S.C. § 1681i; (iii) "[w]illful noncompliance and civil liability for statutory and actual damages" in violation of 15 U.S.C. § 1681n; and (iv) "[i]gnoring explicit consumer requests for verification and documentation" in violation of 15 U.S.C. §§ 1681g, 1681i, and 1681c-2. [DE-1-5] at 4. Plaintiff also brings a claim for "[r]eporting and/or attempting to collect discharged debts in violation of" 11 U.S.C. §§ 525(a), 524(a)(2). *Id.* Plaintiff generally

alleges "[o]ngoing interference with rights protected under FCRA and FDCPA" (*id.*) and that he brings this action "under . . . the Consumer Financial Protection Act of 2010 ('CFPA'), 12 U.S.C. § 5536(a)(1)(a)–(b), 5564, and 5565" (*id.* at 2).

**4. Relief requested**

Plaintiff seeks that the court: (i) "[g]rant a permanent injunction enjoining [Trans Union] from committing future violations of the FCRA, CFPA, and any provision of 'Federal consumer financial law,' as defined by 12 U.S.C. § 5481(14)"; (ii) "[o]rder [Trans Union] to pay redress to [p]laintiff, including restitution, damages, refunds, or other monetary relief"; (iii) "[o]rder [Trans Union] to permanently delete or correct all erroneous and fraudulent accounts from [p]laintiff's [Trans Union] credit file within 10 days of this notice"; (iv) "[i]mpose civil money penalties on [Trans Union]"; (v) "[a]ward costs against [Trans Union]"; and (vi) "[g]rant such other and further relief as the Court deems just and proper." [DE-1-5] at 5.

## II. APPLICABLE LEGAL PRINCIPLES

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of claims for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). Ordinarily, the complaint need contain simply "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Yet a complaint is insufficient if it offers merely "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 557 (2007) (internal quotation marks omitted)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible if the plaintiff alleges factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and shows more than "a sheer possibility that a defendant has acted unlawfully." *Id*.; *see also SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 425 (4th Cir. 2015) ("[I]t is not our task at the motion-to-dismiss stage to determine 'whether a lawful alternative explanation appear[s] more likely' from the facts of the complaint." (quoting *Houck v. Substitute Tr. Servs., Inc*., 791 F.3d 473, 484 (4th Cir. 2015))).

In analyzing a Rule 12(b)(6) motion, a court must "accept as true all well-pleaded allegations" of the challenged complaint and view those allegations "in the light most favorable to the plaintiff." *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005) (citing *Mylan Lab'ys., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *see also Lambeth v. Bd. of Comm'rs of Davidson County, N.C.*, 407 F.3d 266, 268 (4th Cir. 2005) (noting that the court must accept as true all factual allegations of the complaint). All reasonable factual inferences from the allegations must be drawn in the plaintiff's favor. *Edwards*, 178 F.3d at 244. Yet bare assertions of legal conclusions or formulaic recitations of the elements of a claim are not entitled to be assumed true. *Iqbal*, 556 U.S. at 680-81.

Complaints filed by pro se plaintiffs are entitled to liberal construction. *Kerr v. Marshall Univ. Bd. of Governors,* 824 F.3d 62, 72 (4th Cir. 2016) ("We are mindful of our obligation to liberally construe a pro se complaint."); *see also White v. White*, 886 F.2d 721, 724 (4th Cir. 1989) ("Pro se complaints are to be read liberally.").

## III. ANALYSIS

On September 24, 2025, Trans Union filed the instant motion to dismiss [DE-6], with a memorandum in support [DE-7], seeking the dismissal of plaintiff's complaint pursuant to Rule 12(b)(6). Trans Union argues that plaintiff's claims should be dismissed because plaintiff: (1) fails to state a claim under the FCRA because the "alleged inaccuracy is not actionable under the FCRA as the disputed information is not objectively and readily verifiable" (*id.* at 5); (2) "fail[s] to sufficiently allege an unreasonable reinvestigation of his dispute" as required to state a claim under the 15 U.S.C. § 1681i (*id.* at 8); (3) fails to allege facts sufficient to support a willfulness claim under 15 U.S.C. § 1681n (*id.* at 9); (4) has not pleaded facts satisfying the required elements for a claim under 15 U.S.C. § 1681c-2 claim (*id.* at 11); and (5) "does not specify what information is missing from his credit file," and "does not and cannot establish damages and causation" regarding plaintiff's claims under 15 U.S.C. § 1681g (*id.* at 12, 14).

In response, plaintiff argues that he "alleges detailed, well-supported facts." [DE-9] at 1. He asserts that the record "constitutes clear evidence of [p]laintiff's diligence and cooperative intent." *Id.* at 2. Plaintiff argues that, contrary to Trans Union's assertions, he has pleaded "clear, specific factual allegations" in support of his claims, and that the court "should not grant dismissal unless 'it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim.'" *Id.* at 3-4. He states that he has suffered "substantial financial hardship" resulting from Trans Union's actions, such as denial of a vehicle loan, rejection from apartment rental applications, and difficulty obtaining a credit card. *Id.* at 4.

Plaintiff also requests "narrowly tailored discovery" in order to "further substantiate all allegations and claims for relief." *Id.* at 3, 6. He states that "[d]iscovery is especially justified to obtain: [t]he full record of reinvestigation . . . ; [a]ll method-of-verification documentation

responsive to [p]laintiff's certified written request . . . ; [c]ertification of all actions taken by [Trans Union] in response to each formal dispute . . . ; [and t]he nine-digit control number" from plaintiff's Social Security card. *Id.* at 3-4. He argues that this discovery is necessary "to clarify any factual/evidentiary deficiency not cured by the pleadings and exhibits already presented." *Id.* at 5.

Plaintiff attaches an "affidavit of identity" as an exhibit to his response in opposition. [DE-9-1]. Therein, he states that his "Social Security Number (SSN) has been unlawfully or fraudulently utilized by certain corporations and financial institutions" without his "express knowledge, consent, or authorization." *Id.* at 3. Plaintiff then requests that Trans Union provide "verifiable proof that [plaintiff] lawfully consented to and executed any financial obligation." *Id.*

In reply, Trans Union argues that plaintiff "fails to set forth any arguments or facts in support of his opposition to Trans Union's Motion." [DE-16] at 2.

**A. Claims under the FDCPA**

Plaintiff vaguely alleges that Trans Union interfered "with rights protected under [the] FDCPA." [DE 1-5] at 4. Plaintiff does not further detail his allegations under the FDCPA. *Id.* Though unspecified in plaintiff's complaint, the undersigned construes the "FDCPA" to refer to the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692p ("FDCPA"). Under the FDCPA:

> To state a claim [a] plaintiff[] must plausibly allege that (1) [he was] the object of collection activity arising from consumer debt as defined in the FDCPA; (2) defendant[ was a] debt collector[] as defined in the FCDPA; and (3) defendant[] engaged in an act or omission prohibited by the FDCPA.

*Campbell v. Wells Fargo Bank, N.A.*, 73 F.Supp.3d 644, 648 (E.D.N.C. 2014) (citing *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 333 n.3 (4th Cir. 2012)).

Plaintiff's allegations indicate that Trans Union is "not a debt collector, but . . . instead a [CRA]," and thus "plaintiff's FDCPA claims fail as a matter of law." *See Brumby v. Trans Union,*

*LLC*, No. 1:08CV298, 2008 WL 3823712, at *2 (M.D.N.C. Aug. 13, 2008). Because plaintiff has failed to state a claim under the FDCPA, the undersigned RECOMMENDS that any such claims be DISMISSED.

## B. Claims under the FCRA

### 1. 15 U.S.C. § 1681i

Plaintiff alleges that Trans Union "[f]ail[ed] to conduct a reasonable investigation and to delete unverifiable/discharged items within 30 days" in violation of 15 U.S.C. § 1681i. [DE-1-5] at 4. Further, plaintiff alleges that Trans Union violated 15 U.S.C. § 1681i by "[i]gnoring explicit consumer requests for verification and documentation." *Id.*

The FCRA, 15 U.S.C. §§ 1681, *et seq.* was enacted "in 1970 out of concerns about abuses in the consumer reporting industry." *Dalton v. Cap. Associated Indus., Inc.*, 257 F.3d 409, 414 (4th Cir. 2001). "The FCRA imposes duties on both [CRAs] and furnishers of information to the [CRAs]." *Baines v. LVNV Funding LLC*, No. 5:25-CV-506, 2026 LX 196486, at *5 (E.D.N.C. Mar. 19, 2026) (citing *Saunders v. Branch Banking And Tr. Co. of Va.*, 526 F.3d 142, 147-48 (4th Cir. 2008)).

If a consumer notifies a CRA "directly, or indirectly through a reseller" of a completeness or accuracy dispute, 15 U.S.C. § 1681i requires that the CRA "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file." 15 U.S.C. § 1681i(a)(1)(A). "If a consumer notifies a CRA that he disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute." *Saunders*, 526 F.3d at 148 (citing § 1681i(a)(2)). The CRA is then required to provide the consumer "all relevant information regarding the dispute that is received by the agency from the consumer" within the required timeframe. § 1681i(a)(2)(B). "To

state a § 1681i claim, [p]laintiff must allege (1) that [he] disputed the accuracy of an item in [his] credit file; (2) the [CRA] failed to conduct a reasonable reinvestigation; and (3) that a reasonable reinvestigation by the [CRA] could have uncovered the inaccuracy." *Ramirez v. Funding*, No. 24-cv-2335-ABA, 2025 LX 115038, at *19 (D. Md. June 11, 2025) (quoting *Simmons v. TransUnion, LLC*, 712 F.Supp.3d 629, 635 (D. Md. Jan. 23, 2024)).

While plaintiff does allege that he disputed the accuracy of an item in his credit file, (*see* [DE-1-5] at 3 ("Plaintiff submitted a formal dispute . . . identifying identity theft on several credit card accounts fraudulently reported by [Trans Union].")), he fails to allege that Trans Union did not conduct a reasonable reinvestigation. In its response to plaintiff's first and second CFPB complaints, Trans Union reported that it "processed [plaintiff's] request" and took various actions in response thereto. [DE-1-5] at 9-10, 16. Trans Union asserts in its response to plaintiff's first CFPB complaint that it "investigated the information by contacting the creditors to verify the accuracy of the information." *Id.* at 9. Plaintiff does not allege facts to explain, or a basis to show, how Trans Union failed to conduct a reasonable investigation of the disputed information. *See id.* at 3-4; *see also Ramirez*, 2025 LX 115038, at *21 (finding a § 1681i claim failed to state a claim when the plaintiff did "not provide additional facts or any other basis to show that [the CRA] contacting the alleged owner of a disputed debt was an unreasonable method to reinvestigate an alleged inaccuracy.").

Additionally, plaintiff must plausibly allege that a reasonable reinvestigation by Trans Union could have uncovered an inaccuracy. *Ramirez*, 2025 LX 115038, at *19; *see also Denton v. JPMorgan Chase & Co.*, No. 4:19cv114, 2020 U.S. Dist. LEXIS 185745, at *31 n.22 (E.D. Va. Oct. 6, 2020) ("In order to make out a § 1681i failure to reinvestigate claim, a plaintiff 'must first show that his credit file contains inaccurate or incomplete information.'" (quoting *Hinton v. Trans*

*Union, LLC*, 654 F.Supp.2d 440, 451 (E.D. Va. 2009))); *see also Green v. TransUnion & Experian*, Civil Action No. 2:22-cv-01546-RMG-MHC, 2023 U.S. Dist. LEXIS 242571, at *10 (D.S.C. Mar. 30, 2023) (alteration in original) ("[T]o succeed on claims under § 1681i(a), a plaintiff must make a threshold showing of inaccuracy." (quoting *Alston v. Equifax Info. Servs., LLC*, Civil Action No. TDC-13-1230, 2016 U.S. Dist. LEXIS 129424, at *31 (D. Md. Sep. 20, 2016))).

All of plaintiff's substantive claims appear to be premised on frivolous theories of debt discharge and therefore fail to satisfy the "inaccuracy" requirement for a viable § 1681i claim. *See id.* The Bankruptcy Code requires that bankruptcy cases be filed with a bankruptcy court. *See* 11 U.S.C. §§ 301(a), 302(a), 303(b). The undersigned takes judicial notice of the docket of the U.S. Bankruptcy Court for the Eastern District of North Carolina and notes that, as of the date of this memorandum and recommendation, no person with plaintiff's name has made any filings with such court.[4]

Plaintiff's "certificates of discharge" are insufficient to support his bankruptcy theories. The certificates inexplicably include "United States Bankruptcy Court Eastern District of North Carolina" in the header ([DE-1-5] at 19, 21, 23) despite no record of bankruptcy proceedings in this district under plaintiff's name. Further, plaintiff's certificates of discharge "certify that the debtor named above has granted a discharge of consumer debt as defined [in] 11 U.S.C. § 101(8)." *Id.* at 20, 22, 24. Neither 11 U.S.C. § 101(8), which provides the definition of "consumer debt," nor any other bankruptcy provision or federal statute, of which the court is aware, provides a debtor the ability to unilaterally discharge his own debts.

[4] The Fourth Circuit has favorably cited the principle that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (*quoting St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979)).

Plaintiff's IRS Forms 1099-C are also insufficient to support his bankruptcy theories. IRS Form 1099-C is a federal tax form used by a creditor to report the cancellation of debt to the IRS with respect to a debtor. *See* 26 CFR § 1.6050P-1(a). The Fourth Circuit has found that IRS Forms 1099-C are insufficient evidentiary support for discharge of debts. *See Fed. Deposit Ins. Corp. v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013) ("[B]ecause a creditor can be required to file a Form 1099-C even where a debt has not been cancelled, the mere fact that a Form 1099-C is filed does not constitute sufficient evidence, standing alone, that a debt has been cancelled."). Additionally, in the IRS Forms 1099-C that plaintiff attaches to his complaint, plaintiff is listed as the *creditor* and the financial institutions as his *debtors*. *See* [DE-1-5] at 25-28. IRS Forms 1099-C generally do not constitute sufficient evidence of a discharge of indebtedness, and they do so even less here, where plaintiff presents himself as a creditor from whom various financial institutions allegedly borrowed.

In sum, while several of plaintiff's claims rest on the assertion that his debts were discharged in bankruptcy (*see id.* at 4 ("[r]eporting and/or attempting to collect discharged debts")), the legal theories and documents upon which plaintiff bases such discharges are without merit.

Here, the implications of plaintiff's meritless legal theories flow throughout the rest of his complaint. For example, elements of plaintiff's identity theft report (*id.* at 11-12) appear to rest on the same failed theory plaintiff posited in support of his discharge of debt. Plaintiff cites the dates of his "certificates of discharge" as the date he discovered the alleged fraud in at least three accounts. *Compare id.* at 20, 22, 24 *with id.* at 11-12. Notably, plaintiff's identity theft report never alleges that someone fraudulently opened an account in plaintiff's name without his knowledge, but rather that there are "[five] separate fraudulent accounts appearing on [plaintiff's]

consumer FICO credit report which [plaintiff does] not recognize *as reported* and which are the result of identity theft and fraud." *Id.* at 11 (emphasis added). This wording suggests that the alleged "identity theft" is based on a theory that financial accounts continued to report charges to plaintiff's accounts after he believed he had "discharged" the relevant balances in bankruptcy. As plaintiff's "bankruptcies," based on the documents submitted by plaintiff, are illusionary, any derivative "identity thefts" would likewise be meritless.

In sum, the documents which plaintiff incorporates into his complaint do not provide any evidence of a discharge of plaintiff's debts from the relevant financial institutions. Similarly, plaintiff's allegations of identity theft contain numerous inconsistencies and evidence that plaintiff based his claims on meritless legal theories. Plaintiff's FTC identity theft report represents that plaintiff discovered the alleged fraud before it began. *See id.* (reporting discovery dates ranging from "3/2018" to "7/2021," while reporting the fraud began on "12/2024"). In the first CFPB complaint, plaintiff appears to allege that he did not open any of the contested accounts. *See id.* at 8 ("The aforementioned accounts, collections, and hard inquiries appearing on my consumer credit report maintained by you were not opened, made, or initiated by me."). Yet, such allegations are contradicted by plaintiff's exhibits representing his receipt of a discharge of several of these accounts in bankruptcy (*see id.* at 19-24), before the fraud associated with these accounts allegedly began (*see id.* at 11-12 (alleging that the fraud involving each account began in December 2024)).

In an exhibit to his response to Trans Union's motion to dismiss, plaintiff provides an alternative explanation for the contested inaccuracies. [DE-9-1] at 3. He asserts that "entities have used [plaintiff]'s identity to create financial instruments, trusts, and/or special purpose vehicles . . . under the guise of establishing liabilities in the [plaintiff]'s name." *Id.* He further states that "these entities [have] misrepresent[ed] themselves as creditors while, in fact, they have borrowed

against [plaintiff]'s personal information for financial gain; manipulation of assets and liabilities to their benefit." *Id.*

A response to a motion to dismiss is an inappropriate filing to allege new facts in support of a complaint. "It is well-established that parties cannot amend their complaints through briefing." *Odjaghian v. HHS Tech. Grp., LLC*, 848 F. App'x 534, 539 (4th Cir. 2021) (quoting *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184-85 (4th Cir. 2013)).

Yet, even if plaintiff had included these theories in his complaint, these alternative explanations do not allege identity theft. Plaintiff appears to be asserting that the practice of debt securitization by the companies reporting to Trans Union constitutes identity theft. *See* [DE-9-1] at 3 ("[E]ntities have used [plaintiff]'s identity to create financial instruments, trusts, and/or special purpose vehicles."). Courts have routinely rejected arguments that a debtor of an underlying debt subject to securitization has a claim against financial institutions for undisclosed debt securitization or for the debt securitization itself. *See Brown v. CMG Mortg., Inc.*, No. CV 25-00335 JMS-RT, 2025 WL 3240389, at *3 (D. Haw. Nov. 20, 2025) ("[Truth in Lending Act] does not require a disclosure that a loan may be subject to future securitization." (citing 15 U.S.C. § 1638(b))); *Milner v. New Am. Funding LLC*, No. 1:23-CV-4411-MHC-JSA, 2024 U.S. Dist. LEXIS 59544, at *8-9 (N.D. Ga. Apr. 1, 2024) ("Numerous courts over the last several years have squarely rejected the patently frivolous notion that 'securitization' or nondisclosure of securitization constitutes any material credit term or gives the borrower any recourse to avoid paying their mortgage under [the Truth in Lending Act] or otherwise."); *Saniel v. Mortg. Elec. Registration Sys.*, No. 2:10-cv-01497-RLH-PAL, 2011 LX 36989, at *6 (D. Nev. Feb. 28, 2011) ("Securitization and non-disclosure of securitization of a loan are not illegal acts."); *see also In re*

*Walker*, 466 B.R. 271, 284-85 (Bankr. E.D. Pa. 2012) ("[N]umerous courts have held that a borrower lacks standing to challenge a securitized trust's authority to enforce a loan note and mortgage based on purported violations of the underlying [pooling and servicing agreement].") Thus, plaintiff fails to allege identity theft in the explanations proffered in his response to Trans Union's motion to dismiss.

Yet, even if plaintiff had plausibly alleged that his credit report had been impacted by identity theft, the types of claims he alleges are not actionable under § 1681i. The Fourth Circuit has held that "'reported information is actionably "inaccurate" only if that information is objectively and readily verifiable' as mistake- or error-free." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 251 (4th Cir. 2025) (citing *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023)). The Fourth Circuit further explained that "a dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable." *Id.* Specifically, "[i]naccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions—such as claims of fraud or retaliation." *Id.* Other courts in this circuit have applied the holding in *Roberts* to find that allegations of (i) identity theft involving an allegedly forced signature, *see Thompson v. Santee Auto. LLC*, No. 2:26-cv-00749-RMG, 2026 U.S. Dist. LEXIS 83660, at *9-10 (D.S.C. Apr. 16, 2026), or (ii) a loan whose purpose was frustrated by fraud were, in each case, not objectively and readily verifiable. *See Harvey v. USAA Fed. Sav. Bank.*, Civil Action No. 3:25cv155 (RCY), 2026 U.S. Dist. LEXIS 80789, at *13-15 (E.D. Va. Apr. 13, 2026).

Here, plaintiff appears to claim the inaccuracies are the product of fraud. *See, e.g.*, [DE-1-5] at 7. As fraud is not an objectively and readily verifiable inaccuracy, plaintiff has not sufficiently

stated a claim against Trans Union for failure to investigate the alleged inaccuracies.

In support of his claim under 15 U.S.C. § 1681i(a)(7), plaintiff alleges that his June 30 method of verification letter requested "documentation of [Trans Union]'s reinvestigation and specific evidence of how [Trans Union] verified the continued reporting of disputed accounts." *Id.* at 3-4. Plaintiff states that "[Trans Union] has not responded to this lawful request within 30 days." *Id.* at 3. Pursuant to 15 U.S.C. § 1681i(a)(7), a CRA must within 15 days of request by a consumer provide to the consumer "a description of the procedure used to determine the accuracy and completeness of the information . . . , including the business name and address of any furnisher of information contacted in connection with such information and the telephone number of such furnisher, if reasonably available." 15 U.S.C. §§ 1681i(a)(6)(B)(iii); 1681i(a)(7). Plaintiff has alleged that Trans Union failed to timely respond. [DE-1-5] at 3-4.

Yet courts have found that alleged deficiencies in the procedural requirements of § 1681i(a) must be premised on actual and non-frivolous allegations of inaccuracies, which, for the reasons discussed above, plaintiff has failed to do here. *See Walker v. Trans Union, LLC*, No. PWG-16-3926, 2017 WL 4786625, at *5 (D. Md. Oct. 24, 2017) (dismissing multiple claims, including one under § 1681i(a)(7), because the plaintiff failed to "allege that his file contained inaccurate information"); *Brown v. Equifax Inc.*, No. 5:19-CV-78-BO, 2019 WL 1810976, at *1 (E.D.N.C. Apr. 24, 2019) (dismissing a claim under § 1681i because "there is no factual support . . . for the allegation that plaintiff's credit file contains inaccurate information."); *Hinton*, 654 F.Supp.2d at 451 ("Given that plaintiff has failed to adduce facts that might allow a plausible inference that his credit reports contained any particular inaccurate information, plaintiff's § 1681i claim fails."); *see also Barber v. Experian Info. Sols., Inc.*, No. 6:25-cv-12994-TMC-KFM, 2026 LX 293934, at *7-8 (D.S.C. Jan. 7, 2026) (dismissing plaintiff's FCRA claims, where they rely on a "specious

inconsistency" and the plaintiff "provides only vague and conclusory allegations that the defendant did not certify the accuracy of the information before it was reinserted in her credit report.").

In addition, certain of plaintiff's 15 U.S.C. § 1681i claims suffer from procedural deficiencies. With limited exceptions not applicable here, plaintiff must contact a CRA directly or through a reseller for a reinvestigation dispute to fall within the purview of 15 U.S.C. § 1681i(a). *See* 15 U.S.C. § 1681i(a). The FCRA contemplates that the CFPB must relay complaints it receives to CRAs under 15 U.S.C. § 1681i(e). *See* 15 U.S.C. § 1681i(e). Yet while Section 1681i(a) contemplates indirect submissions to CRAs through resellers, it does not mention indirect transmissions through the CFPB. 15 U.S.C. § 1681i(a). Accordingly, indirect complaints pursuant to 15 U.S.C. § 1681i(e) cannot be considered "direct" complaints under 15 U.S.C. § 1681i(a) without rendering the term "direct" meaningless. *Ross v. R.A. N. Dev., Inc. (In re Total Realty Mgmt., LLC)*, 706 F.3d 245, 254 (4th Cir. 2013) ("In construing a statute, to the extent possible, we seek to give meaning to every word and 'reject constructions that render a term redundant.'" (quoting *PSINet Inc. v. Chapman*, 362 F.3d 227, 232 (4th Cir. 2004))).

Another court in this circuit has also found that CFPB complaints do not trigger the requirements of § 1681i(a). *Waller v. Experian Info. Sols., Inc.*, No. CV GLR-23-1960, 2024 WL 3555344, at *5 (D. Md. July 24, 2024) ("Waller disputed the inaccuracy through the CFPB and did not 'notif[y Experian] directly, or indirectly through a reseller,' [and a]s such, Experian did not violate the time requirements of Section 1681i in handling Waller's September 15, 2021 dispute.") (alterations in original); *see also Brown v. Lowe's Cos.*, 52 F.Supp.3d 749, 759-60 (W.D.N.C. 2014) ("[I]n order to trigger the reinvestigation requirement, the consumer is obligated to notify the [CRA] either directly, or indirectly through a reseller, of the dispute."); *Davidson v. Equifax Info. Servs. LLC*, No. 4:24-CV-1172-P, 2025 WL 2632407, at *6 n.8 (N.D. Tex. Aug. 14, 2025) ("The

Court notes that it is questionable whether Section 1681i(a) even applies to Davidson's second reinvestigation request as Davidson sent the request through the CFPB and did not notify Equifax, directly or indirectly through a reseller, as required by this Section." (first citing 15 U.S.C. § 1681i(a)(1)(A); and then citing *Waller*, No. GLR-23-1960, 2024 WL 3555344, at *5 (D. Md. July 24, 2024))), *report and recommendation adopted sub nom. Davidson v. Texan Credit Corp.*, No. 4:24-CV-01172-P, 2025 WL 2490854 (N.D. Tex. Aug. 29, 2025); *Harris v. Pennsylvania Higher Educ. Assistance Agency/Am. Educ. Servs.*, 696 F. App'x 87, 91 (3d Cir. 2017) ("[T]he [CFPB] is not in the business of assembling and evaluating consumer credit information, and is thus not a '[CRA]' under the FCRA."); *but see Wexler v. Reliant Cap. Sols., LLC*, No. 19CV01779DRHAKT, 2020 WL 406100, at *3 (E.D.N.Y. Jan. 24, 2020) ("[T]he Court agrees with Plaintiff's assessment that discovery into how the portal works would be helpful to determine whether Plaintiff's message 'through the [CFPB] portal' went directly to Trans Union or if it was lodged first with the CFPB, which later transmitted it to Trans Union." (second alteration in original)).

Plaintiff only alleges direct contact with Trans Union through his May 12 demand letter, his June 30 method of verification letter, and his July 28 notice of claim letter. *See* [DE-1-5] at 3-4, 17. The May 12 demand letter appears to be exclusively premised on plaintiff's frivolous bankruptcy theories, which the undersigned found meritless for the reasons discussed above. *See id.* at 17 ("[Plaintiff] demand[s] that [Trans Union] investigate and update/correct these errors to reflect the *discharge of the debts in bankruptcy* on my credit report." (emphasis added)). Accordingly, it could not, itself, form the basis of any viable claim under § 1681i.

Plaintiff's July 28 notice of claim letter appears to seek a cause of action for reinvestigation under § 1681i(a) in that he demands that Trans Union "[i]mmediately and permanently remove all disputed, fraudulent, and/or discharged accounts and collections." [DE-1-5] at 37. While plaintiff

demands that this action be taken "within 10 days of [his] [n]otice" (*id.*), the statutory period for response is 30 days from the receipt of the notice "from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A). Plaintiff filed the instant complaint in Cumberland County District Court on August 13, 2025 ([DE-1-3] at 2), which was prior to the expiration of the response period for this July 28 notice of claim letter. Accordingly, this timeline fails to support a claim under § 1681i(a). *See Mavilla v. Absolute Collection Serv., Inc.*, 539 F. App'x 202, 208 (4th Cir. 2013) (finding that "at the time of [the] suit, [defendant] had not breached any duty under the FCRA" where plaintiff filed his claim less than 30 days after the CRA was notified of the credit dispute).

Accordingly, plaintiff has failed to state a claim under 15 U.S.C. § 1681i, and the undersigned RECOMMENDS that any such claims be DISMISSED.

**2. 15 U.S.C. § 1681c-2**

Pursuant to 15 U.S.C. § 1681c-2(a),

> a [CRA] shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of—
>
> (1) appropriate proof of the identity of the consumer;
> (2) a copy of an identity theft report;
> (3) the identification of such information by the consumer; and
> (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

15 U.S.C. § 1681c-2(a).

> The term "identity theft report" . . . means, at a minimum, a report—
>
> (A) that alleges an identity theft;
> (B) that is a copy of an official, valid report filed by a consumer with an appropriate Federal, State, or local law enforcement agency, . . . ; and
> (C) the filing of which subjects the person filing the report to criminal penalties relating to the filing of false information if, in fact, the information in the report is false.

15 U.S.C. § 1681a(q)(4).

Plaintiff claims that he reported "identity theft on several credit card accounts" to Trans Union in the first CFPB complaint. [DE-1-5] at 3. He represents that he "provid[ed] all necessary documentation, including a copy of the FTC Identity Theft Complaint and proof of identity." *Id.* Plaintiff alleges that Trans Union failed to block fraudulent items on his credit report within four business days in violation of 15 U.S.C. § 1681c-2. *Id.*

Plaintiff has clearly alleged that he provided Trans Union with appropriate proof of the identity of the consumer and a copy of an identity theft report. *Id.* Yet, plaintiff's identity theft report is signed by "Gil Bryan Estate" rather than by plaintiff himself. *Id.* at 12. Other courts in this circuit have rejected identity theft reports that were "not 'filed by a consumer.'" *Thomas v. Early Warning Servs., LLC*, Civil Action No. L-10-0825, 2012 U.S. Dist. LEXIS 1516, at *6 (D. Md. Jan. 5, 2012) (quoting 15 U.S.C. § 1681a).

North Carolina courts have explained that "[t]he estate of a deceased person is not an entity known to the law, and is not a natural or an artificial person, but is merely a name to indicate the sum total of assets and liabilities of a decedent." *Blumenthal v. Lynch*, 315 N.C. 571, 579, 340 S.E.2d 358, 362 (1986) (quoting 33 C.J.S. Executors and Administrators § 3(e) (1942)); *see also State v. Linney*, 138 N.C. App. 169, 173, 531 S.E.2d 245, 250 (2000) ("[T]he estate does not constitute a legal entity capable of owning property."). Because plaintiff's identity theft report was not signed by plaintiff, but by a legally meaningless entity, his identity theft report was not signed by a consumer as required by law.

Additionally, plaintiff does not clearly plead that he identified the information that resulted from the alleged identity theft. Plaintiff's identity theft report indicates that there are five separate disputed accounts, which plaintiff "do[es] not recognize as reported and which are the result of

identity theft and fraud." [DE-1-5] at 11. In the first CFPB complaint, plaintiff appears to allege that he did not open any of these accounts. *See id.* at 8 ("The aforementioned accounts, collections, and hard inquiries appearing on my consumer credit report maintained by you were not opened, made, or initiated by me."). Yet, such an interpretation is contradicted by plaintiff's exhibits representing his receipt of a discharge of several of these accounts in bankruptcy (*see id.* at 19-24) before the fraud associated with these accounts allegedly began (*see id.* at 11-12 (alleging that the fraud for each account began in December 2024)). The undersigned has already found that plaintiff's purported bankruptcies appear to rest on either fraudulent assertions or a fundamental misunderstanding of the bankruptcy system. Accordingly, to the extent that the alleged identity thefts are themselves based on plaintiff's frivolous theories of bankruptcy, Trans Union did not err in ignoring meritless legal theories.

In sum, plaintiff has not effectively pleaded that he identified to Trans Union the information that resulted from an alleged identity theft. *Berry v. Early Warning Servs., LLC*, No. CV 25-4638, 2026 WL 1182024, at *4 (E.D. Pa. Apr. 30, 2026) ("There are no factual assertions in the complaint to support his compliance with the requirements of § 1681c-2(a). Plaintiff did not . . . plead sufficient facts to show any identity theft.").

Accordingly, plaintiff has failed to state a claim under 15 U.S.C. § 1681c-2, and the undersigned RECOMMENDS that any such claims be DISMISSED.

**3. 15 U.S.C. § 1681g**

Plaintiff brings a claim under 15 U.S.C. § 1681g, alleging Trans Union "[i]gnor[ed] explicit consumer requests for verification and documentation." [DE-1-5] at 4. Trans Union argues that plaintiff fails to "specify what information is missing from his credit file." [DE-7] at 12.

Here, plaintiff does not state a claim under § 1681g because his request for information

about Trans Union's verification processes is not covered under § 1681g. "Every [CRA] shall, upon request . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a). Section 1681g applies to requests for the consumer's credit file. *See, e.g.*, *Pawlowski v. Experian Info. Sols., Inc.*, No. 120CV1464LMBJFA, 2021 WL 2930076, at *3 (E.D. Va. July 12, 2021); *Jackson v. Warning*, No. CV PJM 15-1233, 2016 WL 7228866, at *9 (D. Md. Dec. 13, 2016); *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 344-45 (4th Cir. 2017). Plaintiff alleges that Trans Union did not, upon request, provide "documentation of [Trans Union]'s reinvestigation and specific evidence of how they verified the continued reporting of disputed accounts, as required by 15 U.S.C. § . . . 1681g." *Id.* at 3-4. These allegations appear to seek to raise a claim regarding methods of verification under 15 U.S.C. § 1681i(a)(7), not 15 U.S.C. § 1681g. Plaintiff does not allege that he requested his consumer credit file. In fact, plaintiff appears to provide his own copy of his credit file in his first CFPB complaint. [DE-1-5] at 8 ("I have attached a copy of my recent TRANSUNION credit report"). Because plaintiff has not alleged that Trans Union failed to provide the information in his credit file, he has failed to state a claim under § 1681g.

Accordingly, the undersigned RECOMMENDS that any claim under 15 U.S.C. § 1681g be DISMISSED.

**4. 15 U.S.C. § 1681n**

15 U.S.C. § 1681n provides the remedies available to a consumer when a person "willfully fails to comply with any requirement imposed under [the substantive provisions of the FCRA] with respect to [that] consumer." 15 U.S.C. § 1681n. "Section[] 1681n . . . [is a] damage provision[] that do[es] not provide [an] independent cause[] of action." *Poindexter v. Equifax Info. Servs., LLC*, No. 6:25-CV-00043, 2026 WL 1181801, at *5 (W.D. Va. Apr. 30, 2026). Though

plaintiff's exact claim under 15 U.S.C. § 1681n is unclear, he appears to claim that he is entitled to "statutory and actual damages." [DE-1-5] at 4. For the reasons stated above, plaintiff has not stated a viable claim under any other provision of the FCRA.

Accordingly, plaintiff has failed to state a claim under 15 U.S.C. § 1681n, and the undersigned RECOMENDS that any such claims be DISMISSED.

**C. Claims under 11 U.S.C. §§ 524(a)(2), 525(a)**

With respect to both 11 U.S.C. § 524(a)(2) and 11 U.S.C. § 525(a), plaintiff argues that Trans Union "[r]eport[ed] and/or attempt[ed] to collect discharged debts in violation of the Bankruptcy Code." [DE-1-5] at 4. 11 U.S.C. § 524(a)(2) provides that a discharge in a case under the Bankruptcy Code "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).

11 U.S.C. § 525(a) prohibits various forms of governmental discrimination, including employment discrimination against individuals who have initiated or completed bankruptcy proceedings under the Bankruptcy Code. Specifically, it provides that, with limited exceptions not applicable here,

> a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the

Bankruptcy Act.

11 U.S.C. § 525(a).

The Bankruptcy Code defines the term "debtor" as a "person . . . concerning [whom] a case under [the Bankruptcy Code] has been commenced." 11 U.S.C. § 101(13).

For the reasons discussed above, plaintiff's allegations and filings demonstrate that his bankruptcy proceedings and filings are at best illusory and at worst fraudulent. Accordingly, plaintiff has failed to state any claim for relief under 11 U.S.C. § 524(a)(2) and 11 U.S.C. § 525(a), and the undersigned RECOMMENDS that any such claims be DISMISSED.

**D. Claims under the CFPA**

Plaintiff states that he brings the instant suit "under . . . the Consumer Financial Protection Act of 2010 ('CFPA'), 12 U.S.C. § 5536(a)(1)(a)-(b), 5564, and 5565." [DE-1-5] at 2. Plaintiff does not further address any such claims. Plaintiff would not be able to bring claims under the CFPA, because "[t]he CFPA does not provide a private right of action." *Kalisz v. Am. Express Centurion Bank*, No. 1:15-CV-01578, 2016 WL 1367169, at *2 (E.D. Va. Apr. 5, 2016). "Section 5564[] reserves litigation power to the Consumer Financial Protection Bureau to enforce any provision of Title 12." *Id.*; *e.g.*, *Wallace v. Navy Fed. Credit Union*, No. CV 3:25-729-MGL-SVH, 2025 WL 1349170, at *3 (D.S.C. Mar. 27, 2025) (collecting cases), *report and recommendation adopted*, No. CV 3:25-729-MGL, 2025 WL 1348607 (D.S.C. May 8, 2025). Thus, the undersigned RECOMMENDS that any claims under the CFPA be DISMISSED.

**E. Plaintiff's request for limited discovery**

Plaintiff, in his response to Trans Union's motion to dismiss, requests "limited discovery . . . to further substantiate all allegations and claims for relief." [DE-9] at 5. "Should the Court find any part of [p]laintiff's claim lacking," plaintiff contends that such discovery will provide the

missing information. *Id.* at 3.

When evaluating a Rule 12(b)(6) motion to dismiss, a "court cannot 'unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Bhattacharya v. Murray*, 515 F.Supp.3d 436, 452 (W.D. Va. 2021) (quoting *Iqbal*, 556 U.S. at 678-79), *aff'd*, 93 F.4th 675 (4th Cir. 2024). A Rule 12(b)(6) motion to dismiss serves "to test the formal sufficiency of the state of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (2d ed. 1990). Because, when evaluating a motion to dismiss under Rule 12(b)(6), "the issue is the sufficiency of the complaint to state a redressable claim[, d]iscovery is irrelevant to the legal questions presented by this motion." *Adkins v. Holland*, 216 F.Supp.2d 576, 580 (S.D.W. Va. 2002), *aff'd*, 87 F. App'x 886 (4th Cir. 2004).

Here, the undersigned, after reviewing plaintiff's complaint and the exhibits attached thereto, has "accept[ed] as true all well-pleaded allegations" and viewed these allegations "in the light most favorable to the plaintiff." *See Venkatraman*, 417 F.3d at 420; *but see Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016) ("When the plaintiff attaches or incorporates a document upon which his claim is based . . . crediting the document over conflicting allegations in the complaint is proper."). For the reasons discussed above, plaintiff has failed to state a claim in his complaint. Thus, his complaint is subject to dismissal and his requests for limited discovery to resolve factual issues are irrelevant.

Accordingly, the undersigned RECOMMENDS that plaintiff's requests for limited discovery be DENIED.

## IV. PLAINTIFF'S MOTION FOR EXTENSION OF TIME [DE-14]

Plaintiff filed a motion for extension of time, seeking leave to amend his complaint to

include a demand for a jury trial. [DE-14]. Because this court recommends dismissal of plaintiff's complaint, amending the complaint to request a jury trial would be futile. Thus, the undersigned RECOMMENDS that plaintiff's motion for extension of time [DE-14] be DENIED AS MOOT. *See Ayodele v. Hudgins*, No. 1:19-CV-183, 2021 WL 4303680, at *1 (N.D.W. Va. Sept. 21, 2021) (denying as moot a motion for leave and extension of time because plaintiff's claims are dismissed).

## V. PLAINTIFF'S MOTION FOR RESOLUTION [DE-21]

On July 28, 2026, plaintiff filed a motion for resolution wherein he requests either (i) resolution of the instant motion to dismiss [DE-6] or (ii) "a status conference concerning the future management of this action." [DE-21] at 1. In light of the instant recommendation that the court grant defendant's motion to dismiss [DE-6] for the reasons provided herein, the undersigned RECOMMENDS that plaintiff's motion for resolution [DE-21] be DENIED AS MOOT.

## VI. CONCLUSION

For the reasons set forth above, the undersigned RECOMMENDS that (i) defendant's motion to dismiss [DE-6] be GRANTED, (ii) plaintiff's motion for extension of time [DE-14] be DENIED AS MOOT; and (iii) plaintiff's motion for resolution [DE-21] be DENIED AS MOOT.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on the respective parties or, if represented, their counsel. Each party shall have until **August 27, 2026**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed by the **earlier of 14 days from the filing of the objections or September 8, 2026.**

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this 13th day of August, 2026.

Brian S. Meyers
United States Magistrate Judge